Filed 6/1/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALEXANDER JEFFREY VANNESSE, <br><br> Defendant and Appellant. | 2d Crim. No. B283857 <br> (Super. Ct. No. 2015000120) <br> (Ventura County) <br><br> ORDER MODIFYING OPINION <br> [No Change in Judgment] |

THE COURT:

It is ordered that the opinion filed herein on May 16, 2018, be modified as follows:

1.  On page 8, line 4, following immediately after "(*People v. Pickard* (2017) 15 Cal.App.5th Supp. 12, 15.)[4]" insert:

If the officer had given the statutorily-required advisement and appellant had chosen a breath test, the officer could and would have required him to submit to a blood test pursuant to section 23612, subdivision (a)(2)(C), which provides: "A person who chooses to submit to a breath test may also be requested to submit to a blood test if the officer has reasonable cause to

believe that the person was driving under the influence of a drug or the combined influence of an alcoholic beverage and a drug and if the officer has a clear indication that a blood test will reveal evidence of the person being under the influence. . . .  The officer shall advise the person that he or she is required to submit to an additional test.  The person shall submit to and complete a blood test."

2.  Starting on page 8, delete the last paragraph beginning with "Even if the Fourth Amendment" and ends on page 9 with "(*In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1136.)"

3.  On page 9, delete the first full paragraph beginning with "If the officer had complied with the letter."

There is no change in judgment.

Filed 5/16/18 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B283857 |
| Plaintiff and Respondent, | (Super. Ct. No. 2015000120) |
| | (Ventura County) |
| v. | |
| ALEXANDER JEFFREY VANNESSE, | |
| Defendant and Appellant. | |

The Vehicle Code provides that, if a person is lawfully arrested for driving under the influence of a drug or a combination of a drug and alcohol, he shall be advised that he has the choice of submitting to either a blood or breath test. (Veh. Code, § 23612, subd. (a)(2)(b).)[1]  Notwithstanding this statutory directive, we hold that if a peace officer advises the arrestee that his only choice is to submit to a blood test, the test results are admissible in a criminal proceeding provided that the arrestee freely and voluntarily consents to a blood test.  The failure to advise the arrestee of his statutory right to choose

_____

[1] Unless otherwise stated, all statutory references are to the Vehicle Code.

between a breath and blood test does not run afoul of any constitutional restraint.

In a misdemeanor complaint, Alexander Vannesse was charged with driving under the influence of a drug.  (§ 23152, subd. (e).)  He appeals an order denying his Penal Code section 1538.5 (hereafter section 1538.5) motion to suppress the results of a chemical test of his blood contending that his consent to the blood draw violates statutory and constitutional law.

In an opinion certified for publication, the Appellate Division of the Ventura County Superior Court affirmed the order denying the motion to suppress.  On our own motion, we transferred the matter to this court.  We affirm.

*Section 1538.5 Hearing*

Appellant was the driver of a vehicle involved in a collision. Responding to the report of an accident, Officer Quinn Redeker, the first police officer to arrive at the scene, concluded that appellant "was possibly under the influence of drugs or alcohol." He "requested additional officers to respond for a DUI investigation."

Officer Matthew Baumann (hereafter the officer), a "certified drug recognition expert," responded to the scene of the collision.  After his preliminary investigation, he arrested appellant "for driving under the influence."  The officer then conducted a "drug recognition evaluation."[2]  He formed the opinion that appellant was under the influence of a "central nervous system depressant."  Both alcohol and some drugs are

---

[2] The only reasonable inference is that the officer did so because he suspected that appellant had been driving under the influence of a drug or the combined influence of a drug and alcohol.

2

central nervous system depressants.  (See *People v. Huynh* (2012) 212 Cal.App.4th 285, 292, fn. 2.)  The record does not show whether the officer or Officer Redeker smelled the "tell-tale" odor of an alcoholic beverage on appellant's breath.  Neither officer was asked whether appellant's breath had this odor.

The officer read to appellant "verbatim" an advisement from a Ventura police department form:  "Drugs slash -- drugs and alcohol:  You are required to submit to a chemical test.  Implied consent of your blood:  A sample of your blood will be taken by nursing staff at the hospital.  If you fail to adequately provide a sample, it will result in the suspension of your driving privilege for a period of one year."  The officer did not advise appellant that he could choose whether the chemical test would be of his blood or breath.  The officer also did not advise appellant that he could refuse to provide any sample.

Appellant verbally agreed to provide a blood sample and signed a consent form that gave him the option of refusing consent.  He was transported to a hospital where a blood draw was performed.  After the blood draw, he lost consciousness.  The officer did not know the cause of the loss of consciousness.

At the section 1538.5 hearing, defense counsel said that appellant was not challenging "the probable cause for the arrest." Counsel asserted, "The focus of the motion is really a *McNeely* issue."  In *Missouri v. McNeely* (2013) 569 U.S. 141, the Supreme Court applied the Fourth Amendment's warrant requirement to nonconsensual blood testing in driving under the influence of alcohol cases.  The Court "h[e]ld that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant."

3

(*Id*. at p. 165.) "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." (*Id*. at p. 156.)

The People argued that *McNeely* was inapplicable because "unlike the defendant in *McNeely* who was subjected to a *nonconsensual* blood draw, [appellant] freely and voluntarily gave his consent to have his blood drawn." (See *People v. Harris* (2015) 234 Cal.App.4th 671, 676, 689 (*Harris*) [*McNeely* is inapposite where a motorist freely and voluntarily consents to a warrantless blood test since such consent "is actual consent under the Fourth Amendment," an exception to the warrant requirement]; *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219 ["one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent"].)

Defense counsel responded: Appellant did not freely and voluntarily consent to the blood draw because the officer "did not give him an admonition that's in accord with California State Law . . . . [¶] . . . [A] properly given implied consent admonition would give him the option to choose between a breath sample or a blood sample, and it would not say that he is required to give a blood sample." But defense counsel acknowledged that a breath test would not have shown whether appellant was under the influence of a drug. He further argued that appellant's consent was not voluntary because he lost consciousness after signing the consent form.

In denying the suppression motion, the trial court impliedly found that appellant had freely and voluntarily consented to the blood draw. It expressly found that he had consented pursuant to the "implied consent law." We do not dwell upon the latter

4

reason for the court's ruling. "We may sustain the trial court's *decision* without embracing its *reasoning*. Thus, we may affirm the superior court's ruling on [appellant's] motion to suppress if the ruling is correct on any theory of the law applicable to the case, even if the ruling was made for an incorrect reason. [Citation.]" (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529; see also *People v. Smithey* (1999) 20 Cal.4th 936, 972.) As we explain below, appellant freely and voluntarily gave both verbal and written consent to the blood draw.

*Standard of Review*

When a defendant moves to suppress evidence pursuant to section 1538.5, the People have "the burden of proving that the warrantless search or seizure was reasonable under the circumstances. [Citations.]" (*People v. Williams* (1999) 20 Cal.4th 119, 130.) On appeal, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"In a suppression motion 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court.' [Citation.] Consequently, if an inference is permissible under the evidence and it upholds the trial court's decision, we must presume that the trial court drew it. Thus, we must 'view the facts upon which the suppression motions were submitted in the light most favorable to the People, drawing therefrom all reasonable inferences in support of the trial court's order denying

5

the motions.' [Citation.]" (*People v. Dominguez* (1988) 201 Cal.App.3d 345, 353; see also *People v. Woods* (1999) 21 Cal.4th 668, 673.)

*Substantial Evidence Supports the Finding that*
*Appellant Freely and Voluntarily Consented to the Blood Draw*

"[A] court may exclude . . . evidence [pursuant to section 1538.5] only if exclusion is . . . mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment." (*In re Lance W.* (1985) 37 Cal.3d 873, 896.) There is no Fourth Amendment violation when a motorist freely and voluntarily consents to a warrantless chemical test of his blood. (*Harris, supra*, 234 Cal.App.4th at pp. 685, 689.) "That the motorist is forced to choose between submitting to the chemical test and facing serious consequences for refusing to submit, pursuant to the implied consent law, does not in itself render the motorist's submission to be coerced or otherwise invalid for purposes of the Fourth Amendment." (*Id*. at p. 689.) "'The voluntariness of consent is a question of fact to be determined from the totality of circumstances. . . . [Citations.]' [Citation.]" (*Id*. at p. 690.) The trial court's determination will be upheld if supported by substantial evidence. (*People v. James* (1977) 19 Cal.3d 99, 107.)

Appellant claims that he did not freely and voluntarily consent to the blood draw because the officer failed to give a proper advisement under the implied consent law. Instead of advising him that he was required to give a blood sample, appellant argues that the officer should have advised that he could choose either a blood or breath test.[3] Appellant relies on

---

[3] At oral argument before this court, appellant also claimed that 1) he should have been expressly advised that he could

6

section 23612, subdivision (a)(2)(B), which provides, "If the person is lawfully arrested for driving under the influence of any drug or the combined influence of an alcoholic beverage and any drug, the person has the *choice* of whether the test shall be of his or her blood or breath, and *the officer shall advise the person that he or she has that choice*." (Italics added.)

The officer did not comply with the letter of section 23612, subdivision (a)(2)(B) because he did not advise appellant of his statutory right to choose either a blood or breath test. But this violation did not prejudice appellant and is of no constitutional significance. The administration of a breath test would have

refuse to submit to a blood test, and 2) the officer's failure to so advise him renders his consent invalid because it was coerced. The implied consent law does not require such an express advisement. The law provides, "The [arrestee] shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result" in specified consequences. (§ 23612, subd. (a)(1)(D).) "The defendant need not be advised of the right to refuse as a prerequisite to a finding of voluntariness. But if so advised, this fact supports that a search was in fact voluntary as a product of free choice and not coercion. [Citation.]" (*People v. Mason* (2016) 8 Cal.App.5th Supp. 11, 20-21.) Appellant's right to refuse to provide a blood sample was implied by the officer's advisement that his license would be suspended if he "fail[ed] to adequately provide a sample." In other words, appellant could refuse and suffer the legal consequences of a refusal. (See *Birchfield v. North Dakota* (2016) __ U.S. __, 136 S.Ct. 2160, 2169 ["Suspension or revocation of the motorist's driver's license remains the standard legal consequence of refusal"].) Appellant's right to refuse was also implied by the consent form that he signed. The form gave him the option of refusing.

been inconclusive because it would not have disclosed whether appellant was under the influence of drugs or a combination of drugs and alcohol. "[A] breath test . . . only tests for alcohol content." (*People v. Pickard* (2017) 15 Cal.App.5th Supp. 12, 15.)[4]

The failure to give an advisement in compliance with the implied consent law does not mandate the suppression of the test result. As previously noted, evidence may be suppressed pursuant to section 1538.5 only if the defendant's Fourth Amendment rights were violated and suppression is mandated by the federal exclusionary rule. (*In re Lance W.*, *supra*, 37 Cal.3d at p. 896.) "[C]ase law has rejected contentions that a failure to *advise* an arrestee of the tests available or to *honor* the arrestee's choice of a particular test amounts to a constitutional violation. [Citations.]" (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 119; see also *Harris*, *supra*, 234 Cal.App.4th at p. 692 ["[F]ailure to strictly follow the implied consent law does not violate a defendant's constitutional rights"]; *People v. Ling* (2017) 15 Cal.App.5th Supp. 1, 10 ["although the actions of the arresting officer failed to comply with the requirements of the implied consent law, no court has held that such a failure rises to the level of a constitutional violation, and we do not so hold now"].)

Even if the Fourth Amendment had required the officer to comply with the letter of the implied consent law, the blood test result would have been admissible under the inevitable discovery

---

[4] There is a suggestion in the record that Officer Redeker administered a preliminary alcohol screening test (P.A.S.) which showed a .00 blood alcohol level. We do not factor this into our analysis because this evidence was not admitted at the 1538.5 hearing. But this suggestion may explain why the officer did not comply with the letter of section 23612, subdivision (a)(2)(B).

doctrine.  Pursuant to this doctrine, "illegally seized evidence may be used where it would have been discovered by the police through lawful means. . . .  The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct.  [Citation.]" (*People v. Robles* (2000) 23 Cal.4th 789, 800.)  "The test is not whether 'the police would have certainly discovered the tainted evidence, rather, it is only necessary to show a reasonably strong probability that they would have.'  [Citations.]" (*In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1136.)

If the officer had complied with the letter of the implied consent law by giving the statutory advisement and appellant had chosen a breath test, the officer could and would have required him to submit to a blood test pursuant to section 23612, subdivision (a)(2)(C), which provides:  "A person who chooses to submit to a breath test may also be requested to submit to a blood test if the officer has reasonable cause to believe that the person was driving under the influence of a drug or the combined influence of an alcoholic beverage and a drug and if the officer has a clear indication that a blood test will reveal evidence of the person being under the influence. . . .  The officer shall advise the person that he or she is required to submit to an additional test.  The person shall submit to and complete a blood test."  Thus, appellant's blood test result would have been admissible because "it would have been inevitably discovered independent of the [allegedly] improper police conduct.  [Citation.]" (*In re Rudy F.*, *supra*, 117 Cal.App.4th at p. 1136.)

Moreover, exclusion of the test result is prohibited by the "Truth-in-Evidence" provision of Article I, section 28, subdivision (f)(2) of the California Constitution.  "By its plain terms, section

9

28(d) [now section 28(f)(2)] *requires* the admission in criminal cases of *all* 'relevant' proffered evidence unless exclusion is allowed or required by an 'existing statutory rule of evidence relating to *privilege* or *hearsay*, or *Evidence Code, [s]ections 352, 782 or 1103,'* or by new laws passed by two-thirds of each house of the Legislature. (Italics added.)" (*People v. Wheeler* (1992) 4 Cal.4th 284, 292.) "'[S]ection 28(d) supersedes all California [as opposed to federal] restrictions on the admission of relevant evidence except those preserved or permitted by the express words of section 28(d) itself. [Citations.] . . .' [Citation.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1173, second brackets in original.)

We agree with the rule and rationale of *Harris*, *supra*, 234 Cal.App.4th 671. There, a sheriff's deputy arrested the defendant for driving under the influence of drugs and advised him that he was required to take a blood test. "Defendant responded, 'okay,' and [the deputy] testified that at no time did defendant appear unwilling to provide a blood sample." (*Id*. at p. 678.) On appeal, defendant argued that the deputy's "admonition under the implied consent law was false" because he said "that a blood test was 'the only option' available." (*Id*. at p. 691.) Defendant contended that a motorist in his situation "must be given the choice between a blood or breath test and may only be compelled to take a blood test 'if the officer has a clear indication that a blood test will reveal evidence of the person being under the influence.' (Veh.Code, § 23612, subd. (a)(2)(B), (C).)" (*Ibid*.) The *Harris* court decided that, "[u]nder the totality of the circumstances, . . . defendant freely and voluntarily consented to his blood being drawn, and . . . was not coerced or tricked into submitting to the blood test." (*Id*. at p. 692.) This is a fair

10

characterization of what happened in the instant case.  Appellant has certainly not shown that there is substantial evidence to the contrary.

*A New Variation on "Diminished Capacity"*

Appellant claims that he was in a state of "diminished capacity" and therefore unable to freely and voluntarily consent to the blood draw.[5]  His "diminished capacity" allegedly occurred because he "had just been involved in [a] traffic collision."  Appellant observes, "Although the record does not reflect the extent of [his] injuries, [the officer] testified that [he] lost consciousness" after the blood draw.

The "diminished capacity" issue is forfeited because appellant failed to raise it below.  (*People v. Williams*, *supra*, 20 Cal.4th at pp. 130-131.)  Even if the issue were preserved for appeal, there is no evidence in the record that, before losing consciousness, appellant lacked the capacity to give consent.  The loss of consciousness could have been a reaction to the blood draw rather than the result of injuries sustained in the collision.

The evidence is insufficient to show that appellant was injured at all.  Officer Redeker testified that he had been informed over the police radio "that there was a noninjury traffic collision."  Appellant alleges that he was "required . . . to be transported to the emergency room for treatment [of his injuries]."  In fact, he was transported to the emergency room to

_____

[5] This new variation is not to be confused with the "diminished capacity" that was, at one time, a rule that could reduce culpability for crime.  (See, e.g. *People v. Wells* (1949) 33 Cal.2d 330, 346; *People v. Gorshen* (1959) 51 Cal.2d 716, 726, overruled on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82, 89; see also *People v. Avena* (1996) 13 Cal.4th 394, 414.)

11

have his blood drawn.  There is no evidence that he was treated in the emergency room for injuries sustained during the collision.

*Conclusion*

The record of the section 1538.5 hearing contains ample evidence that appellant freely and voluntarily consented to a chemical test of his blood.  He verbally agreed to a blood draw and signed a consent form that gave him the option of refusing consent.

*Disposition*

The order denying appellant's motion to suppress is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


YEGAN, Acting P. J.


We concur:


PERREN, J.


TANGEMAN, J.


12

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Todd W. Howeth, Public Defender, William M. Quest, Snr. Deputy, for Defendant and Appellant.
Gregory D. Totten, District Attorney, Michelle J. Contois, Deputy District Attorney for Plaintiff and Respondent.